UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charles Richards,                                    Civil No. 06-3227 (MJD/FLN)

    Petitioner,

v.                                                   **REPORT AND RECOMMENDATION**

Marty C. Anderson, Warden,

    Respondent.

___

Charles Richards, *Pro Se* Petitioner.
Tracy Perzel, Assistant United States Attorney, for Respondent.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [#1]. Respondent filed a response in opposition to Petitioner's petition [#5]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends Petitioner's petition be denied and dismissed with prejudice.

### I. BACKGROUND

Petitioner Charles Richards is currently imprisoned at the Federal Medical Center in Rochester, Minnesota, however, the events underlying this Petition occured at the Federal Correctional Institution in Pekin, Illinois. He is serving an 240-month sentence, with 3 years supervised release, imposed by the United States District Court for the Western District of Missouri following a conviction for having been convicted of felonies and transporting a firearm in interstate commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) and (2). (Buege Decl. ¶ 3, Attach.

A.) Petitioner has a projected release date of January 5, 2009, via good conduct time release. (Buege Decl. ¶ 3, Attach. A.).

Petitioner brings this §2241 habeas corpus petition claiming that a habeas writ should issue to relieve him from a disciplinary sanction of the loss of 27 days of good conduct time credit.[1] Petitioner alleges his due process right under the Fifth Amendment was violated during his disciplinary hearing because the Respondent presented perjured testimony and denied Petitioner the right to have medical staff present testimony. (Pet. 1.) For relief, Petitioner seeks restoration of the good conduct time and an extra 27 days good time credit as punishment to the BOP. (Pet. 10.)

On June 21, 2000, at 4:05 a.m., Petitioner refused to provide a urine sample within two-hours of a request to provide a urine sample in violation of BOP policy. (Bierschbach Decl. ¶3, Attach. A.) Petitioner's failure to provide a urine sample was reported by Mr. Kindred, S.O.S., and an incident report was prepared by Lt. Halverson. (Bierschbach Decl. ¶3, Attach. A.) Lt. Halverson reported: "[Petitioner] stated he takes a medication that causes him to urinate all of the time, so he doesn't drink anything after 10:00 p.m. and that he did not have any fluid in him to urinate." (Bierschbach Decl., Attach. A.) Lt. Halverson contacted Ms. Dortch from Health Service and she stated the Petitioner was not taking any medications that would prevent him from urinating. (Bierschbach Decl., Attach. A.) Lt. Halverson provided Petitioner with a copy of the incident report and advised him of his rights. (Bierschbach Decl. ¶3.) Petitioner indicated that he read the incident report and understood his rights. (Bierschbach Decl. ¶3.)

---

[1] Petitioner was also sanctioned with 60 days disciplinary segregation, 90 days loss of visiting privileges and a recommended disciplinary transfer. By filing a habeas corpus petition, rather than a civil rights complaint, Petitioner has clearly indicated that he is challenging the duration of his confinement, rather than the conditions of his confinement. The only relief that would effect the duration of his confinement would be the restoration of his good time credits.

The incident was referred for review to the Unit Discipline Committee ("UDC"), which held a hearing on June 26, 2000. Petitioner told the UDC that he did not refuse to provide a urine sample, but rather he was unable to urinate because he is on diuretics. (Bierschbach Decl. ¶6, Attach. A.) The UDC referred the matter to the disciplinary hearing officer ("DHO") for disposition, and recommended that if Petitioner were found to have committed the prohibited act, he be sanctioned with 60 days disciplinary segregation, 6 month loss of visiting privileges, loss of 27 days good conduct time, and a disciplinary transfer. (Bierschbach Decl., Attach. A.) After the UDC hearing, Petitioner was provided with two documents titled: "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO)." (Bierschbach Decl., Attach. B.) Both of these forms were signed by Petitioner. (Bierschbach Decl., Attach. B.) On the notice of hearing form, Petitioner waived his right to a staff representative and requested R.N. Meyers and Officer Cannon as witnesses at the hearing before the DHO. (Bierschbach Decl., Attach. B.)

The DHO hearing was held on July 11, 2000. R.N. Meyers attended the hearing and testified that on the afternoon of June 20, 2000, he had re-filled Petitioner's prescription for medication that assisted with urination and Petitioner took the medication at that time. (Bierschbach Decl., Attach. C, 1.) Officer Cannon was not available for the hearing and submitted a statement that R.N. Meyers told him Petitioner's medication prevented Petitioner from urinating. (Bierschbach Decl., Attach. C, 2.) Petitioner testified and reiterated that his medication prevented him from urinating and he would have urinated if he could. (Bierschbach Decl., Attach. C, 2.)

Due to the inconsistencies regarding Petitioner's ability to urinate, the DHO postponed the hearing until July 17, 2000, and requested Health Services reconcile the conflicting statements regarding the effect of Petitioner's medication. (Bierschbach Decl., Attach. C, 3.) On July 12, 2000,

Clinical Director Thomas A. Webster, M.D., submitted the following statement to the DHO: "At your request I have reviewed the record of this inmate. I cannot find any medical reason or medication which would prevent this inmate from providing a urine sample within the two hour time frame." (Bierschbach Decl., Attach. C.)

The DHO relied on the medical review by Dr. Webster in finding that petitioner committed the prohibited act of refusing to provide a urine sample within two hours. (Bierschbach Decl., Attach. C, 3.) The DHO sanctioned Petitioner with 60 days disciplinary segregation, 90 days loss of visiting privileges, loss of 27 days good conduct time, and a disciplinary transfer. (Bierschbach Decl., Attach. C, 3.) A written report of the findings, sanctions and reasoning of the DHO was provided to Petitioner on July 20, 2000. (Bierschbach Decl., Attach. C, 3.)

Petitioner appealed the decision of the DHO through the Administrative Remedy Program and his appeal was remanded for rehearing. (Bierschbach Decl. ¶14.) The Regional Office determined that it was administrative error in the initial hearing not to include documentation regarding the specific medications taken by the Petitioner. (Bierschbach Decl. ¶14.)

On October 24, 2000, the rehearing was held. (Bierschbach Decl., Attach. D.) The DHO received the same evidence from the initial hearing. (Bierschbach Decl., Attach. D.) The Petitioner added to his previous testimony by stating that spironolactone is the medication that causes him to urinate and that he takes it at 2:00 p.m., so he is not kept up at night. (Bierschbach Decl., Attach. D, 2.) Petitioner also testified that since he has taken spironolactone, prison officials have requested urine tests at 4:00 a.m. because it is difficult for him to go. (Bierschbach Decl., Attach. D, 2.) Dr. Webster also provided a supplemental statement that read:

> I contacted our Chief Pharmacist Mr. William Gould and we reviewed the list of medications this inmate was prescribed on June 21, 2000.

> The medications on June 21, 2000, included amlodipine, spironolactone, glyburide, metformin, and ibuprofen.
>
> We have concluded that **none** of these medicaitons would in **any way** inhibit this inmate from giving a urine sample within the two hour time frame.

(Bierschbach Decl., Attach. D.)

The DHO also received a summary of Petitioner's Urine Testing Log to verify Petitioner's statement that he is frequently asked for urine samples at 4:00 a.m. (Bierschbach Decl., Attach. D.) The summary indicated that, from January 15, 2000, to June 11, 2000, he was asked for six urine samples, and only one request was in the early morning, 5:45 a.m. (Bierschbach Decl., Attach. D.) All other requests were between 4:25 p.m. and 11:21 p.m. and Petitioner provided a urine sample in all the previous instances. (Bierschbach Decl., Attach. D.) The Urine Testing Log indicates that Petitioner provided a urine sample within 13 minutes of the 5:45 a.m. request. (Bierschbach Decl., Attach. D.)

The DHO found that Petitioner committed the prohibited act. In making this finding, the DHO relied on the two statements provided by Dr. Webster. (Bierschbach Decl., Attach. D, 3.) The DHO also took issue with Petitioner's credibility due to Petitioner's statements about early morning testing being contradicted by the testing log. (Bierschbach Decl., Attach. D, 3.) The DHO sanctioned Petitioner with 60 days disciplinary segregation, 90 days loss of visiting privileges, loss of 27 days good conduct time, and a disciplinary transfer. (Bierschbach Decl., Attach. D, 3.) A written report of the findings, sanctions and reasoning of the DHO was signed on October 27, 2000 and was thereafter provided to Petitioner. (Bierschbach Decl. ¶18.)

Petitioner appealed the decision of the DHO through the Administrative Remedy Program and his appeal was denied. (Buege Decl. ¶6.) Petitioner then filed this Petition on August 4, 2006.

(Pet. 1.)

## II.  LEGAL ANALYSIS

**A.     Petitioner's Constitutional Rights Were Not Violated During the Disciplinary Proceedings**

To obtain habeas relief under 28 U.S.C. section 2241, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2244(c)(3); Rose v. Hodges, 423 U.S. 19, 21 (1975).  Here, Petitioner alleges that the disciplinary sanction violated his due process rights under the Fifth Amendment when perjured testimony was presented and he was prevented from having medical staff present testimony.  (Pet. 1.)   The Court finds that the record does not support Petitioner's contention that he was disciplined in violation of his constitutional rights.

**1. The Disciplinary Hearing Comported With the Procedural Requirements Set Forth in Wolff.**

Petitioner claims he was subjected to disciplinary sanctions in violation of his due process rights under the Fifth Amendment.  A prisoner must be afforded at least some procedural due process protections before being deprived of good conduct time.  Wolff v. McDonnell, 418 U.S. 539, 557 (1974).  A prisoner who is facing a loss of good conduct credits is not entitled to the full panoply of procedural rights that accompanies a criminal prosecution.  Id. at 566.  To satisfy the constitutional requirements of due process, prisoners facing a loss of good conduct time must be given: 1) advance written notice of the charges; 2) an impartial hearing body; 3) an opportunity to present witness testimony and other evidence; 4) assistance for illiterate inmates or in complex cases; and 5) a written explanation of the ultimate resolution of the charges.  Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir. 2002).

The Court finds Petitioner received at least the minimal procedural benefits prescribed by Wolff during his disciplinary proceeding. The record shows that Petitioner was provided an incident report that afforded him written notice of the charges well in advance of the UDC and DHO hearings. The hearing was conducted by a certified DHO, who are impartial hearing officers. Petitioner was present during the UDC and DHO proceedings. He was advised of his rights prior to the hearings, including the right to a staff representative and the right to present witnesses and documentary evidence on his behalf. Petitioner testified at the hearing and also presented two witnesses to testify on his behalf. The Petitioner claims that he was denied the opportunity to present witnesses, but there is no evidence in the record that Petitioner was prevented from presenting any witnesses. Furthermore, there is no evidence that the DHO was presented or considered perjured testimony during the hearing. After the hearings, Petitioner was provided a written report of the DHO decisions, which included a written statement of the evidence relied upon and the reasons for the sanctions imposed. The record reflects sufficient evidence to find that Petitioner did in fact refuse to provide a urine sample within two hours. The record shows that Petitioner was afforded the basic procedural safeguards required by Wolff.

**2.    There Was Sufficient Evidence to Support the Findings of the DHO**

Petitioner claims that there was insufficient evidence to find that he engaged in the prohibited act as alleged. Petitioner claims that he should not be held accountable for his failure because he was medically unable to produce a urine sample. To satisfy the requirements of due process, however, the record must only include some evidence that supports the disciplinary decision. See Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445 (1985).

In Hill, the Supreme Court stressed that the decision of a prison disciplinary officer after a

disciplinary hearing was entitled to considerable deference. See id. at 454 (the findings of a prison disciplinary authority should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record"). Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Id. at 455-56. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. Id.; see also Goff v. Burton, 7 F.3d 734, 739 (8th Cir. 1993). Courts are not part of the appellate process for prison discipline proceedings. Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969); see also, Mitchell v. Maynard, 80 F.3d 1433, 1445 (10th Cir. 1996) (if there is some evidence to support a disciplinary committee's decision, the requirements of procedural due process have been met; the decision can be upheld even if the evidence supporting the decision is "meager").

Here, the Court finds that the minimal "some evidence" standard is met. The DHO took into consideration all of the available evidence, and determined that Petitioner had committed the prohibited act. The statements from Dr. Webster provide "some evidence" that Petitioner was able to provide a urine sample and refused to do so.[2] Wolff provides that inmates be given an opportunity to persuade an impartial decision maker that he did not commit the prohibited conduct as alleged. Petitioner was given such an opportunity, and the DHO was not persuaded by his claims. Based on all the evidence, the DHO reasonably concluded that Petitioner committed the prohibited act and sanctioned him in accordance with policy.

The disciplinary proceeding by which Petitioner was sanctioned comported with the due

---

[2] Petitioner focuses on the fact that spironolactone assists in urination, but no evidence supports the conclusion that Petitioner is completely unable to urinate without spironolactone.

process requirements set forth in <u>Wolff</u> and <u>Hill</u>.  Petitioner's Petition for a writ of habeas corpus should be denied.

### III.  RECOMMENDATION

Based on the files, records and proceedings herein, it is **HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [#1] be **DENIED,** and that this action be **DISMISSED WITH PREJUDICE.**


DATED: June 4, 2007                              s/ *Franklin L. Noel*
                                                 FRANKLIN L. NOEL
                                                 United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 21, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.